**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| | * |
| RILEY JOHN BEARD et al., | |
| | * |
| Appellants, | |
| | * |
| v. | |
| | *   Civil No. 22-2501-BAH |
| TRUMAN 2016 SC MD ML, LLC | |
| [Classes 5,7] et al., | * |
| | |
| Appellees. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Debtors Riley John Beard and Regina Lorraine Beard ("Debtors") appeal an order denying confirmation of their proposed modified Chapter 11 plan by the United States Bankruptcy Court for the District of Maryland. ECF 1. The appeal is opposed by several Creditors of the Debtors ("Creditors").[1] ECFs 27–31. This matter is fully briefed, and the Court has reviewed the record on appeal, ECFs 12, 14, 37, and 39, the Debtors' brief, ECF 25, the opposing Creditors' briefs, ECFs 27–31,[2] and the Debtors' reply, ECF 38. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons below, the decision of the bankruptcy court is **AFFIRMED**.

---

[1] The opposing Creditors are Truman 2016 SC MD ML, LLC (Classes 5 and 7); Selene Finance LP as attorney in fact for Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not individually but as Trustee for Pretium Mortgage Acquisition Trust (Class 8); HSBC Bank USA, N.A. as Trustee for Luminent Mortgage Trust 2006-6 (Classes 9 and 11); Nationstar Mortgage LLC (Class 10); Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc Pass Through Certificates 2006-QO8 (Class 12); as well as associated deficiency claims (Class 19). ECF 1.

[2] The briefs of the Creditors are largely identical, differing only when describing the specific property owned by each Creditor and the impact of the proposed modification plan on that property. *See* ECFs 27–31. Because the legal arguments and overarching facts described in each

## I.    **BACKGROUND**

This Court accepts the undisputed facts presented by the bankruptcy court.  *See Quality Daycare at BUP, LLP v. U.S. Tr.*, Civ. No. DLB-22-901, 2023 WL 2648793, at *1 (D. Md. Mar. 27, 2023).  A summary of key facts is presented here, and the factual background is laid out in more detail in the bankruptcy court's order denying confirmation of the proposed modified plan. *See* ECF 1-1, at 1–13.

In December 2010, Debtors, who owned their own home and eleven rental properties,[3] filed a voluntary Chapter 11 bankruptcy petition after struggling to pay their mortgage payments. *Id.* at 2.  At the time of their initial filing, both Debtors were employed and together earned over $150,000 annually, but by fall of 2011, both were unemployed.  *Id.*  In December 2012, Debtors filed their initial plan and disclosure statement.  *Id.* at 3.  By this time, Debtors had failed to make any payments to all but one secured creditor for approximately two years.  *Id.*  The bankruptcy court ultimately confirmed the Debtors' third amended plan on October 31, 2013, a five-year plan with an effective date of December 29, 2013.  *Id.*  The confirmed plan relied on Debtors' "ability to stabilize and increase rental income."  *Id.*  Debtors also hoped to supplement their income with earnings from future employment.  *Id.*  Though Debtors had at one point planned to open and operate a small business, a doughnut shop, to further increase their income, by the time of the confirmation of the plan, "they recognized that [the doughnut shop] was a chancy endeavor and the success of the [plan] did not depend on cash flows from it."  *Id.*

Within six months of the confirmation of the plan, Debtors began failing to make required payments.  *Id.*  In November 2014, Debtors reached consensual resolutions with many creditors

---

brief are identical, this Court will cite to only one Creditor brief when citing to content replicated in each brief.
[3] Debtors have since sold one of the rental properties.  ECF 1-1, at 2.

under the plan and paid the past due amounts that had accrued between January and November 2014.  *Id.* at 3–4.  Subsequently, Debtors went on to amass significant defaults to several creditors over the next few years, as well as failed to make substantial payments for property tax escrows, ultimately resulting in unpaid amounts of more than $300,000.  *Id.* at 4–5.  In September 2020, Debtors moved to modify their plan.  *Id.* at 4, ECF 25, at 10.  Several creditors objected to this proposed modification, and Debtors amended their proposed modification on January 27, 2022. ECF 1-1, at 5.  The amended modified plan would have extended the plan by five years, until August 2027, culminating in balloon payments in year five.  *Id.*  A subset of the creditors represented under Debtors' plan continued to object to the proposed modified plan, despite the amendments.  *Id.*  This subset of creditors is present before the Court in this case to oppose Debtors' appeal.  *Id.*

The bankruptcy court held a hearing on the proposed modified plan on May 4, 2022.  ECF 14-9.  At the hearing, Debtors testified that they had encountered several significant difficulties since the confirmation of the original plan.  ECF 1-1, at 13.  Specifically, Debtors testified to increased medical costs (an increase of approximately $200 per month in insurance costs and approximately $4,000 in out of pocket expenses to cover two surgeries); difficulties with employment (one Debtor was employed between 2014 and 2018, then again beginning in 2021, while the other was unemployed for the entire period with the exception of a period from 2015 to 2016); repairs to a vehicle that cost between $4,000 and $5,000; repeated misapplication of payments by lenders; a tax bill of $15,000 in 2015; and logistical struggles that prevented them from opening the doughnut shop as they had planned.  ECF 39, at 25–42, 82–83; ECF 1-1, at 12–13; ECF 25, at 21–29; ECF 27, at 31–39.  On September 15, 2022, the bankruptcy court entered

its order denying confirmation of Debtors' proposed modified plan.  *See* ECF 1-1.  Debtors then timely filed this appeal.  ECF 1.

## II.   <u>STANDARD OF REVIEW</u>

District courts review appeals of bankruptcy court decisions "in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2).  In other words, this Court reviews the bankruptcy court's legal decisions de novo and reviews its factual findings for clear error.  *Tidewater Fin. Co. v. Williams*, 498 F.3d 249, 254 (4th Cir. 2007) (citing *In re Merry–Go–Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005)).  Appeals from a bankruptcy court's decision to grant or deny a motion to modify a confirmed plan are reviewed for abuse of discretion.  *In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007); *Martinez v. Gorman*, 607 F. Supp. 3d 680, 683 (E.D. Va. 2022).  A court abuses its discretion when it "applies the incorrect legal standard, rests its decision on 'a clearly erroneous finding of a material fact,' or 'misapprehended the law with respect to underlying issues in litigation.'"  *Leavers v. McLaughlin*, 648 F. Supp. 3d 671, 675–76 (D. Md. 2023) (quoting *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013)).  "A [factual] finding is clearly erroneous only if, after reviewing the record, the reviewing court is left with 'a firm and definite conviction that a mistake has been committed.'"  *Id.* (quoting *Klein v. PepsiCo, Inc.*, 845 F.2d 76, 79 (4th Cir. 1988)).

## III.   <u>ANALYSIS</u>

The parties raise several issues in this appeal.  First, Creditors assert that this Court lacks jurisdiction to hear this appeal, arguing that the order of the bankruptcy court was not a final decision and that Debtors failed to obtain leave to file an appeal of an interlocutory order.  *See* ECF 27, at 9–11.  Next, Debtors argue that the bankruptcy judge applied the wrong standard in

4

evaluating plan modifications proposed under 11 U.S.C. § 1127(e).  ECF 25, at 49–50.  Debtors further argue that the bankruptcy court erred in its interpretation of 11 U.S.C. § 1127(f), resulting in the erroneous application of additional requirements to the evaluation of Debtors' proposed modified plan.  *Id.*  Finally, Debtors argue that, even with the erroneous additional requirements and under the standard applied by the bankruptcy court, their proposed modification should have been confirmed.  ECF 25, at 50–55.  This Court finds that jurisdiction is proper; that the bankruptcy court applied the proper legal standard under § 1127(e); and that the bankruptcy court did not err in finding that the Debtors failed to show that they had experienced a "substantial and unanticipated" change in circumstance, rendering moot the question of the additional requirements of § 1127(f).  Accordingly, the bankruptcy court did not abuse its discretion in denying the Debtors' proposed modification, and the decision of the bankruptcy court is AFFIRMED.

### A. This Court has jurisdiction over this appeal from the bankruptcy court's order denying confirmation of Debtors' proposed modified plan.

Federal district courts have jurisdiction over appeals from final decisions of a bankruptcy court and over appeals from interlocutory orders under certain circumstances.  28 U.S.C. § 158(a); *In re Looney*, 823 F.2d 788, 790 (4th Cir. 1987).  The concept of finality is construed more liberally in the context of bankruptcy appeals than in other civil matters.  *Id.* (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986)) ("[T]he standard for finality of bankruptcy court orders is relaxed from that of non-bankruptcy district court orders.").  Orders or decisions that "resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights of [] one of the parties" to the litigation constitute final orders, *see id.*, but so, too, do orders settling "any dispute between a bankrupt [person] and his creditors over a claim or priority [that] was a separate proceeding," *Piccinin*, 788 F.2d at 1009 (internal quotation marks omitted) (quoting *In Re Saco Local Dev. Corp.*, 711 F.2d 441, 443–45 (1st Cir. 1983)).

It is well accepted that *approval* of a post-confirmation motion to modify constitutes a final order from which a party may appeal as of right. *See, e.g.*, *In re McGrahan*, 459 B.R. 869, 873 (B.A.P. 1st Cir. 2011) (citing *In re Storey*, 392 B.R. 266, 268 (B.A.P. 6th Cir. 2008)) ("Generally, a bankruptcy court order granting a motion to modify a confirmed chapter 13 plan pursuant to § 1329 is a final order."); *Croniser v. Logan*, No. 5:22-CV-352-D, 2023 WL 4288412, at *3–4 (E.D.N.C. June 12, 2023) (considering appeal from bankruptcy court's approval of motion to modify confirmed plan).

Several district and circuit courts across the country have found that a denial of a post-confirmation motion to modify also constitutes an appealable final decision. *See, e.g.*, *Germeraad v. Powers*, 826 F.3d 962, 966 (7th Cir. 2016) (holding that denial of Chapter 13 post-confirmation motion to modify on the merits constitutes appealable final action); *McKinney v. Russell*, 567 B.R. 384, 386–87 (M.D. Ala. 2017) ("The denial of a bankruptcy trustee's motion to modify a Chapter 13 plan is the sort of 'final order' that may be appealed as of right."). *But see In re Vincent*, 301 B.R. 734, 738 (B.A.P. 8th Cir. 2003) ("We must conclude that an order denying modification of a plan is no more final than an order denying confirmation of a plan . . . .  Therefore, we dismiss this appeal for lack of jurisdiction.").[4]

The Fourth Circuit has considered cases stemming from the appeal of a bankruptcy court's denial of a post-confirmation motion for modification in both Chapter 13 and Chapter 11 cases. *See In re Murphy*, 474 F.3d 143 (4th Cir. 2007) (considering, *inter alia*, appeal from district court's decision affirming bankruptcy court's denial of post-confirmation motion to modify Chapter 13

---

[4] In support of their argument that "[o]rders denying confirmation of plans are not final orders as long as the debtor is free to propose another plan," Creditors cite to a case that dealt with confirmation of an initial plan with leave to amend, a very different factual scenario than is present here. *See* ECF 27, at 10–11 (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 503 (2015)); *Bullard*, 575 U.S. at 498 (explaining the facts of the case regarding denial of confirmation of initial plan).

plan and making no mention of jurisdictional concerns); *Legend Radio Grp., Inc. v. Sutherland*, 211 F.3d 1265 (4th Cir. 2000) (affirming denial of post-confirmation motion to modify Chapter 11 plan with no mention of jurisdictional concerns).  Thus, though there is precedent from at least one other circuit indicating that a denial of a post-confirmation motion to modify does not constitute an appealable order, there is considerably more out-of-circuit caselaw that supports the opposite finding, and Fourth Circuit caselaw suggests that such an order constitutes an appealable final decision in this circuit.  As such, this Court has jurisdiction to hear this appeal.

## B. The bankruptcy court properly applied the Fourth Circuit's "substantial and unanticipated change" test in evaluating Debtors' modified plan proposed under § 1127 (e).

The bankruptcy court evaluated Debtors' post-confirmation modification proposed under 11 U.S.C. § 1127(e) by using the "substantial and unanticipated change" standard outlined by the Fourth Circuit for use in the evaluation of post-confirmation modifications proposed under 11 U.S.C. § 1329(a).  *See* ECF 1-1, at 15–16 (citing *In re Murphy*, 474 F.3d at 149–150; *In re Arnold*, 896 F.2d 240 (4th Cir. 1989)).  Under this standard, before a debtor can proceed with a post-confirmation modification, they must first show that they "experienced a substantial and unanticipated change in [their] post-confirmation financial condition" and then demonstrate that they meet the statutory requirements for such a modification.  *In re Murphy*, 474 F.3d at 150.  The bankruptcy court found that, though the Fourth Circuit has yet to decide what standard to applies to a Chapter 11 post-confirmation modification under § 1127(e), it was logical to apply the "substantial and unanticipated change" test.  ECF 1-1, at 16.  The bankruptcy court based this reasoning on its observation that the language of § 1329(a) and that of § 1127(e) were nearly identical at the time *In re Murphy* and *In re Arnold* were decided, and the fact that the purpose of § 1127(e) was to make the provisions regarding post-confirmation modification of plans under

Chapter 11 similar to those under Chapter 13.  ECF 1-1, at 16 (citing *Collier on Bankruptcy* ¶ 1127.04 (Richard Levin & Henry J. Sommer eds., 16th ed., 2022)).

This Court agrees with the bankruptcy court that the "substantial and unanticipated change" test is the correct standard to apply in evaluating a proposed modification under § 1127(e).  The Fourth Circuit's reasoning in *In re Murphy* and *In re Arnold* holding that the "substantial and unanticipated change" test applies to modifications brought under § 1329(a) applies equally to modifications brought under § 1127(e).  As the Fourth Circuit explained in *In re Murphy*:

> [T]he doctrine of *res judicata* prevents modification of a confirmed plan . . . unless the party seeking modification demonstrates that the debtor experienced a "substantial" and "unanticipated" post-confirmation change in his financial condition.  This doctrine . . . ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place.

474 F.3d at 149 (citing *In re Arnold*, 896 F.2d at 243–45).  These considerations are just as present in a Chapter 11 post-confirmation modification as in one under Chapter 13.  *See In re Mercer*, No. 09-04088-8-ATS, 2013 WL 6507585, at *4 (Bankr. E.D.N.C. Dec. 12, 2013) ("The justification for applying a 'substantial and unanticipated' test when considering post-confirmation modifications in chapter 11 is even stronger than in chapters 12 and 13 . . .").[5]

While Debtors are correct that "[n]o directly binding case in the District of Maryland . . . has provided the definitive standard [to apply] for determining modification under Section 1127(e)," Debtors' only apparent argument as to why the "substantial and anticipated change" test

---

[5] The *In re Mercer* court goes on to explain that the "substantial and unanticipated" test is perhaps even more justified in the Chapter 11 context than that of Chapter 12 or Chapter 13 "because unlike in chapter 12 and 13, [Chapter 11] creditors have an opportunity to vote for or against a debtor's proposed plan of reorganization.  Even more importantly, unlike debtors in chapter 12 and chapter 13 who have the right under § 1208(b) and § 1307(b) to dismiss their cases if they are dissatisfied with a post confirmation plan modification proposed by an unsecured creditor, a chapter 11 debtor who is an individual does not have the right to dismiss the case and would be bound by the modification."  2013 WL 6507585, at *4.

should not apply hinges upon a statutory interpretation argument focused on § 1127(f) and
§ 1329(b). ECF 25, at 49–50. Regardless of any potential merits of this argument,[6] it is unavailing
in this context because the "substantial and unanticipated change" test derives from § 1329*(a)* and
was applied by the bankruptcy court to § 1127*(e)*. *See In re Murphy*, 474 F.3d at 149 (developing
"substantial and unanticipated change" standard for evaluating modifications under § 1329(a));
ECF 1-1, at 16 (applying "substantial and unanticipated change" standard "to the dispute under §
1127(e)"). Though Debtors' statutory interpretation argument may bear on the specific statutory
requirements that a proposed modification must satisfy before approval, laid out in § 1127*(f)* and
§ 1329*(b)*, the initial "substantial and unanticipated change" inquiry derives from the doctrine of
*res judicata* as applied to modifications proposed under § 1329*(a)* and § 1127*(e)*. *See In re
Murphy*, 474 F.3d at 149.

As the bankruptcy court rightly pointed out, bankruptcy courts in this circuit have applied
this standard to modifications brought under § 1127(e) in at least two cases beyond this one. ECF
1-1, at 16 (citing *In re Mercer*, 2013 WL 6507585; and *In re Redding*, No. 14-05812-5-SWH, 2017
WL 5468800 (Bankr. E.D.N.C. Nov. 7, 2017)).[7] Even the sole case Debtors cite as an example of
a district in which the courts have found that the proper standard for such a modification is the

---

[6] Debtors' brief appears to conflate two arguments based upon statutory interpretation: first, that
the "substantial and unanticipated change" test used to analyze modifications under § 1329(a)
should not apply to plans proposed to be modified under § 1127(e), and second, that the word
"apply" in § 1127(f) should be read to impose a lesser requirement than the word "apply" in §
1329(b). ECF 25, at 49–50. The second of these arguments need not be addressed here as the
threshold "substantial and unanticipated changes" inquiry ends the analysis of this case, as
discussed below.

[7] Though Debtors argue that *In re Mercer* and *In re Redding* are factually distinguishable from this
case, the legal analysis of whether the "substantial and unanticipated change" *standard* applies
to a modification proposed under § 1127(e) is independent of the factual context of a given case. *See*
ECF 25, at 52–53 (citing factual differences between this case and *In re Mercer*, 2013 WL
6507585, and *In re Redding*, 2017 WL 5468800).

"sound discretion" of the bankruptcy court, *see* ECF 25, at 50, acknowledges that it is assumed that the "substantial and unanticipated change" test applies to § 1127(e) analysis in the Fourth Circuit because of the similarities between that section and § 1329(a). *In re Sandford*, 498 B.R. 307, 311 (Bankr. D.N.M. 2013) (stating that the Fourth Circuit applies the "substantial and unanticipated change" test to evaluate motions under § 1127(e) but citing to *In re Murphy*, 474 F.3d 143 (4th Cir. 2007), which considered a motion to modify under § 1329(a)).

This Court finds that the Fourth Circuit's reasoning in applying the "substantial and unanticipated changes" test from *In re Murphy* and *In re Arnold* to post-confirmation modifications proposed under § 1329(a) applies with at least as much vigor to post-confirmation modifications proposed under § 1127(e). As such, the bankruptcy court did not err by analyzing Debtors' plan under this standard.

### C. The bankruptcy court did not err in finding that Debtors did not experience substantial and unanticipated changes and, therefore, did not abuse its discretion in denying their proposed modification.

Having established that the "substantial and unanticipated change" test outlined by the Fourth Circuit in *In re Arnold* and in *In re Murphy* applies in this case, the bankruptcy court did not abuse its discretion in denying Debtors' proposed modification for failing to meet that standard. Under the "substantial and unanticipated change" standard, the Court must first ask whether the debtor has experienced a substantial and unanticipated change in circumstance. *See In re Murphy*, 474 F.3d at 150 (outlining analogous process for proposed modifications under § 1329(a)). Then, the Court considers whether the proposed modification falls under the narrowly defined categories of acceptable modifications outlined in § 1127(e). *Id.* Finally, the Court evaluates "whether the proposed modification complies with" the requirements of § 1127(f). *Id.* "If the change in the debtor's financial condition was either insubstantial or anticipated, or both, the doctrine of *res judicata* will prevent the modification of the confirmed plan" and the inquiry stops at step one. *Id.*

The bankruptcy court in this case found that the circumstances experienced by the Debtors were not substantial and unanticipated. ECF 1-1, at 16. The bankruptcy court explained that in both 2013, when the original plan was confirmed, and in 2022, when the amended modified plan was proposed, the income Debtors derived from their rental properties was not enough to cover Debtors' obligations under the plan. *Id.* at 17. The bankruptcy court further explained that both Debtors were unemployed when the original plan was confirmed, and though one of the Debtors was employed in 2022, her income was still insufficient to cover the costs of the plan. *Id.* That Debtors were unable to open a doughnut shop business as they planned was not unanticipated, the bankruptcy court reasoned, because it was "a high-risk concept that never got beyond the planning stage." *Id.* Thus, the bankruptcy court found that the changes in Debtors' income could not be said to be substantial and unanticipated. *Id.* at 17–18.

The bankruptcy court was also unconvinced that the specific costs incurred by Debtors since the confirmation of their original plan constituted substantial and unanticipated changes. *Id.* at 17–18. The clerical errors on behalf of lenders that resulted in misapplied or missed payments contributed little to the overall amount of Debtors' post-confirmation arrearages, indicating the impact on their post-confirmation finances was not substantial. *Id.* at 11. As to the "unexpected tax bill" Debtors received in 2015, the bankruptcy court was "hard-pressed to conclude that an increase in the Debtors' tax obligation resulting from a two-year failure to pay mortgage payments—and the attendant lack of deductions—is unanticipated." *Id.* at 18. The bankruptcy court also highlighted that Debtors are "investors and managers of ten investment properties," indicating a level of sophistication that should have rendered financial fluctuation anticipated. *Id.* As such, the bankruptcy court concluded that these changed costs incurred by Debtors were not substantial and unanticipated. *Id.* at 17–18.

The bankruptcy court did not err in this analysis.  Bankruptcy courts in this circuit have found that facts similar to those in this case do not amount to substantial and unanticipated changes. *See In re Hayes*, No. 15-04581-5-DMW, 2018 WL 718386, at *5 (Bankr. E.D.N.C. Feb. 5, 2018) (finding that change in circumstance was not unanticipated when reduction in income was due to factors such as change in tax refund amount, which debtors had included on original filing documents, and preexisting medical condition); *In re Helmeid*, No. 16-01576-5-DMW, 2018 WL 2324203, at *1–3 (Bankr. E.D.N.C. May 22, 2018) (finding that automobile repair costs of over $8,000 on a used car and a decrease in income due to seasonal work changes did not constitute substantial and unanticipated changes).  When bankruptcy courts in this circuit have found a substantial and unanticipated change due to loss of income or other negative changes in the debtors' financial status, the facts have been more extreme than those present here.  *See In re Miller*, No. 99-81339, 2002 WL 31115656, at *2 (Bankr. M.D.N.C. Apr. 19, 2002) (finding substantial and unanticipated change when debtors lost ability to earn income from one of two tractor trailers, resulting in significant decrease in business income, and were suddenly and unexpectedly given custody of three grandchildren); *In re White*, 411 B.R. 268, 276 (Bankr. W.D.N.C. 2008) (finding substantial and unanticipated change when debtor's home was foreclosed and vehicle was totaled); *In re Runnels*, 530 B.R. 626, 630 (Bankr. W.D.N.C. 2015) (finding substantial and unanticipated change when debtor lost workers' compensation benefits simultaneously with the onset of permanent disability, reducing monthly income to half of what it was when initial plan was confirmed).

Here, Debtors have *increased* earnings compared to when the original plan was confirmed, as one of the Debtors is now employed and neither were working at the time of the confirmation.[8] *See* ECF 1-1, at 2, 13.   Though Debtors had *hoped* that they would both be able to work or that they would be able to start a small business at the time of the confirmation of their initial plan, Debtors' only income at the time of confirmation was their rental properties, and that rental income was the financial foundation of the confirmed plan.  ECF 1-1, at 3.  Thus, it cannot be said that the change in Debtors' earnings was substantial in a way that "support[s] the essence of [their] modification." *In re Hayes*, 2018 WL 718386, at *5.

Despite an increase in earnings, Debtors could still show a substantial change in circumstance through significantly increased costs, resulting in a reduction to their net income. *See, e.g.*, *In re Miller*, 2002 WL 31115656, at *2 (considering costs associated with suddenly becoming caretakers of three children as a factor in assessing substantial and unanticipated change analysis).  Here, Debtors point to increased costs primarily in the form of roughly $24,000 in one-time bills between 2014 and 2022, stemming from medical expenses, car repairs, and a tax bill.[9] ECF 1-1, at 12–13; ECF 25, at 21–29; ECF 27, at 31–39.  The medical bills and car repair costs

---

[8] Though one could argue that the additional employment income constitutes a substantial change, the substantial and unanticipated change put forth by the movant proposing the modification must "support the essence of the modification which the [movant is] seeking." *In re Hayes*, No. 15-04581-5-DMW, 2018 WL 718386, at *5 (Bankr. E.D.N.C. Feb. 5, 2018).  Accordingly, a debtor who seeks to modify their plan to reduce their burden through extending the time for repayment, as is the case here, must show a decrease in their net income or other circumstances that negatively impact their ability to conform to the terms of the original plan.  *Id.*

[9] Debtors also stress that several creditors misapplied their payments at various points.  ECF 25, at 25–30, 52; ECF 39, at 36–43.  The misapplied payments certainly appear to have caused significant confusion and extra work for Debtors, but Debtors were able to resolve many of the issues that arose from misapplied payments with the relevant creditors.  ECF 39, at 42; ECF 25, at 29 ("This misapplication of payments situation by lenders or servicers . . . was finally resolved in 2022.").  Nowhere do Debtors argue that these errors were the source of a substantial portion of their unpaid balance.  S*ee* ECF 39, at 36–43; ECF 25; ECF 38.

amounted to roughly $9,000 total, and though this "might create a short-term strain on the Debtors' budget, this moderate change in their financial condition is not significant enough to support" a modification to their plan.  ECF 1-1, at 12–13; ECF 25, at 23–24; ECF 27, at 31–32; *In re Royal*, No. 14-07134-5-DMW, 2016 WL 2568861, at *1–2 (Bankr. E.D.N.C. May 2, 2016 ) (holding the same with respect to a one-time car repair cost of at least $8,850).  Even considering the $15,000 tax bill, given that the amount owed by Debtors "exceeded $300,000 as of July 31, 2021," this Court finds that the bankruptcy court did not clearly err in determining that a set of one-time debts that amounted to less than 10% of the total amount owed, combined with costs incurred over the span of nearly a decade, failed to constitute a substantial change, especially when paired with the Debtors' increased earnings.  ECF 1-1, at 5.

Even if there had been a substantial negative change in Debtors' circumstance, the bankruptcy court still properly denied Debtors' modification if the change was not unanticipated. "A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed."  *In re Murphy*, 474 F.3d at 149 (citing *In re Arnold*, 869 F.2d at 243).  Bankruptcy courts often consider the sophistication of the debtors in evaluating whether a change is unanticipated.  *See In re Royal*, 2016 WL 2568861, at *2 (financial difficulties caused by required automobile repairs were not unanticipated to debtor who was a mechanic).

The bankruptcy court did not err in finding that the changes in Debtors' earnings since the confirmation of their original plan were not unanticipated.  That only one Debtor would be able to maintain employment could not have been unanticipated at the time of the initial plan confirmation.  Although Debtors had *hoped* that they would both be able to work or that they would be able to start a small business, their failure to do so was not so inconceivable that it could

not have been anticipated, particularly given that the small business they had hoped to start "never got beyond the planning stage."  ECF 17.  In fact, when Debtors created their original plan in 2013, they drafted two versions of the plan: one that included the revenue and expenses from the doughnut shop and one that did not.  ECF 39, at 27.  That Debtors prepared an alternative original plan that did not incorporate the doughnut shop only further indicates that, though they may have hoped their business venture would be successful, it was not wholly unanticipated that it would not be.

The bankruptcy court similarly did not err in finding that the additional expenses incurred by Debtors since the time of the original confirmation were not entirely unanticipated.  By far Debtors' largest expense during this period, the tax bill Debtors incurred from failing to pay their mortgages (and thus losing the tax deductions associated therewith), cannot be said to be unanticipated, as it was a result of Debtors' own failure to meet their mortgage obligations.  *See* ECF 1-1, at 17–18.  This is especially true in light of the fact that Debtors were, and are, professional property investors.  *See* ECF 1-1, at 2.  The other costs incurred by Debtors for medical and automobile expenses, though minor compared to the tax bill, were also not entirely unexpected at the time of the confirmation of the original plan.  "Mr. Beard has been on social security disability since he was 46," and was 68 at the date of the hearing on the modified plan.  ECF 25, at 31 (citing hearing testimony).  The Beards purchased their rental properties to provide income for their retirement, and Mr. Beard acknowledged at the hearing that he was "at [retirement] age and past."  *Id.* (citing hearing testimony).  While unfortunate, it cannot be said to be unanticipated that a couple nearing retirement age, one of whom has long received supplemental income due to disability, might incur medical costs over the course of several years.  And a single car repair over the course of several years is far from unforeseeable.  *See In re Helmeid*, 2018 WL

15

2324203, at *2 (finding that "mechanical difficulties" in a used car were "certainly foreseeable"). Though many of these events, particularly those involving the health of the Debtors, were unfortunate, they were not so unforeseeable during this time period that they "could not have been reasonably anticipated [by the Debtors] at the time the [initial] plan was confirmed." *In re Murphy*, 474 F.3d at 149.

Certainly, Debtors' lives have not gone as planned since the confirmation of the original plan, but this does not amount to a "substantial and unanticipated change" in their circumstances, and the bankruptcy court did not err in finding as such. Under the structure laid out in *In re Murphy* and *In re Arnold,* this concludes the analysis of the proposed modification, and the Court need not consider Debtors' additional argument regarding the requirements of 11 U.S.C. § 1127(f). Accordingly, the bankruptcy court did not abuse its discretion in denying Debtors' proposed modified plan. The bankruptcy court's decision is affirmed.

IV. **CONCLUSION**

For the reasons stated above, the judgment and order of the bankruptcy court is **AFFIRMED**. A separate implementing order follows.

Dated: <u>December 19, 2023</u>           <u>              /s/              </u>
Brendan A. Hurson
United States District Judge

16